In the Matter of the Claim of FRED W. KRIETE, Respondent, against TODD SHIPYARDS et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, November 24, 1954.

*George J. Hayes, Bernard Katzen* and *Victor Fiddler* for appellants.

*Nathaniel L. Goldstein, Attorney-General* (*John J. Quinn* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

*Fred W. Kriete,* respondent in person.

BERGAN, J.   This case brings up for consideration the differences, in their respective rights to benefits under the Disability Benefits Law (Workmen's Compensation Law, art. 9), between painters working for different employers and longshoremen working for the same employer under a " shape-up " system.

In *Matter of Russomanno* v. *Leon Decorating Co.* (306 N. Y. 521), where disability benefits were disallowed, it was established that the claimant, a painter, had been employed by different employers for about forty years, but had been working for the last employer only one calendar week before disability. In the work for the other covered employers he had not been shown to have been employed four or more consecutive weeks. In view of the explicit eligibility requirement of the statute (Workmen's Compensation Law, § 203) that there must be employment for " a covered employer for four or more consecutive weeks " it was held that Russomanno had not established eligibility.

The case before us is at once more complex and different. Claimant testified he worked as a longshoreman for appellant Todd Shipyards for almost eleven years before the occurrence of the disability on which this claim is based. He said that during this time he had been continuously on the Todd payroll " and never been off ".

He did not actually work every day. He described himself as working " Whenever there was work. It is a shape-up job; shipyard ". He was required to work or to shape up for the job on a certain minimal number of days or lose his rating. He added " I have my same badge from the day I was hired up to the present date and I have never been off their list."

On January 5, 1951, claimant appeared at the employer's shape-up and was excused from work by the employer because of illness from January 15 to February 26, 1951. Thereafter he obtained a leave of absence from the employer until April 24th when he worked. He worked during the succeeding two weeks until May 12th. He became disabled May 13th.

The Workmen's Compensation Board has ruled that claimant is eligible for disability benefits and has directed payment accordingly. The employer and its carrier have appealed on the ground that claimant is not qualified for benefits because he was not shown to have been employed by the employer for more than four consecutive weeks.

The appellants seem to argue that the four consecutive weeks must immediately precede the disability, since they argue that " The undisputed facts here show that claimant had some employment only during the three consecutive weeks prior to illness ". The statute does not require the qualifying " four consecutive weeks " employment to have been immediately before the disability. The qualification is to be " in the employment " for that period.

If we look at the year 1951 alone it will be seen that it could be found, as it has been by the board, that the claimant appeared for the employer's shape-up in January and thereafter suffered an illness during which he was excused from actually working. The expression used in the employer's records is " out on medical ". Thereafter, according to the same records, he was given " a leave of absence ".

The employer seems to have regarded the employment as continuing during these periods, since " out on medical " and " a leave " both suggest that the employment relationship continued. The situation is open enough factually to permit the board to find that in 1951 there was " employment " during four con-

secutive weeks. The employer had the right to excuse reporting at the shape-up and had the right to excuse absence from work due to illness and to treat the employment itself as continuing.

Moreover, if the shape-up of January 5th is treated as " employment " in pursuance of contractual understanding between employer and employee; and if the medical disability from the beginning of the next week, starting January 15th, to its conclusion February 26th be treated as an unbroken continuation of employment, there is here established employment for four consecutive weeks. This is especially so where the employer keeps the employee on the payroll. The statute provides that an employee who " becomes disabled while eligible for benefits in the employment of a covered employer " shall not be deemed to have terminated the employment during any period he is eligible to receive benefits (§ 203).

Claimant made no claim for benefits during the period beginning January 15th because he testified he did not then realize he was entitled to benefits; but the board could treat this illness as a " disability " within the statutory definitions (§ 201, subd. 8).

Hence, we think the board had a factual basis to have found qualification within the months in 1951 prior to disability. But we think claimant's status was more broadly based than this. He testified to long-continued employment. The employer's only proof was a copy of the 1950 payroll record. If the weeks in which claimant shaped up are included, this record itself shows employment for several periods of four consecutive weeks.

The decision and award of the board should be affirmed, with costs.

HALPERN, J. (dissenting). I think that the decision should be reversed and the case remitted to the board for reconsideration in the light of the decision in *Matter of Russomanno* v. *Leon Decorating Co.* (306 N. Y. 521) which was decided by the Court of Appeals after the decision of this case by the board. Also, I believe that the questions raised in the dissenting memorandum of Board Member James Amadei should be explored by the board upon the rehearing.

FOSTER, P. J., COON and IMRIE, JJ., concur with BERGAN, J.; HALPERN, J., dissents in a memorandum.

Decision and award affirmed, with costs to the Workmen's Compensation Board.