In the Matter of the Claim of FREDA A. FLO, Respondent, against GENERAL ELECTRIC COMPANY et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, March 21, 1957.

*Joseph H. Murphy* and *William H. Barnes* for appellants.

*Anthony J. Fernicola* for claimant-respondent.

*Louis J. Lefkowitz, Attorney-General* (*John J. Quinn* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

HALPERN, J. The question presented is whether the disability of the claimant occurred " during employment " within the meaning of the Disability Benefits Law (Workmen's Compensation Law, art. 9) notwithstanding the fact that she was on a maternity leave of absence without pay, at the time she became disabled through illness.

The claimant had been in the employ of the appellant General Electric Company for several years and was a participant in the General Electric insurance plan, to which she made regular

contributions through payroll deductions. A company rule required that any employee who became pregnant take a maternity leave of absence commencing in the seventh month of pregnancy and running until two months after the birth of the child, unless the employee was physically able to return to work at an earlier time. Pursuant to this rule, the claimant stopped work and went on maternity leave on July 3, 1953. She discontinued her contributions for sickness and accident insurance under the plan at that time. The claimant's child was born September 29, 1953. About one month later, on October 31, 1953, the claimant became disabled by reason of an illness unrelated to her pregnancy. This illness lasted for several months and the claimant filed a claim with the appellant insurance carrier for disability benefits under section 204 of the Disability Benefits Law but her claim was rejected upon the ground that her coverage had terminated prior to the commencement of the disability.

The Workmen's Compensation Board, which administers the Disability Benefits Law, made an award under section 204 of that law and, from that award, the employer and the insurance carrier appeal. Section 204 deals with "Disability during employment". There is another section, section 207, which deals with "Disability while unemployed".

Section 203 of the Disability Benefits Law (Workmen's Compensation Law, art. 9) provides that an employee is eligible for disability benefits under section 204 only "during such employment and for a period of four weeks after such employment terminates". The term "employment" is not defined in the statute in a manner which affords a direct answer to the question before us but throughout the lengthy statements in subdivision 6 of section 201 of what the term "employment" includes, emphasis is placed upon the performance of services as the essence of employment. The phrase "service performed" and variants thereof appear in subdivision 6 over a dozen times. The term "a day of disability" is defined in subdivision 13 of section 201 as "any day on which the employee was prevented from *performing work* because of disability" (italics added).

In *Matter of Russomanno* v. *Leon Decorating Co.* (306 N. Y. 521, 524) the Court of Appeals held that "Employment in 'four or more consecutive weeks' is had only when the worker is actually at work during some part, at least, of each of those successive weeks". While this holding related to the attaining of initial eligibility, it has broader significance in indicating that

actual work is essential to the concept of "employment" throughout the statute.

The claimant ceased to perform work for the appellant employer on July 3, 1953. Her employment for the purpose of the Disability Benefits Law terminated on that date, even though the employment relationship may have continued for the purpose of collective bargaining rights, seniority rights or other matters not relevant to the Disability Benefits Law. Coverage of the claimant by her employer, under section 204 of the Disability Benefits Law, continued for four weeks thereafter under the express provision of the statute but upon the expiration of the four weeks she ceased to be covered under section 204.

The test of the employer's liability for benefits under the statute is not whether the employment relationship was still in effect at the time when the disability occurred but whether the claimant was in active wage-earning employment at that time. The disability benefits plan under the statute, insofar as it imposes liability upon the employer or his insurance carrier, is a contributory plan. Under section 209, every employee must contribute one half of 1% of his wages, not to exceed 30 cents per week, to the cost of providing disability benefits. By subdivision 4 of section 209, the employer is authorized to collect the contribution " through payroll deductions ". No other method of collecting contributions from employees is provided. If the employer fails to make a deduction for any payroll period, he may within one month thereafter collect the contribution through payroll deduction; beyond that time, collection is unauthorized. These provisions fortify the conclusion that the statute contemplates coverage by the employer under section 204 only during a period of actual work during which the employee earns wages from which contributions can be deducted. The contributory nature of the plan is inconsistent with any construction of the statute which requires coverage under section 204 during the period of a layoff or leave of absence without pay. There is no provision in the statute for the payment of contributions by the employee during a period during which no wages are earned and there is no provision in the statute for coverage by the employer during a period during which contributions are not made, except for the period of four weeks after the termination of employment, and except for the case of a disability upon a disability, discussed below.

The Disability Benefits Law is closely integrated with the Unemployment Insurance Law. Indeed, the connection between the two statutes is so close that Governor Harriman suggested in his 1955 message to the Legislature that " In many respects,

it would seem more logical to have disability insurance and unemployment insurance administered by the same agency '' (N. Y. Legis. Doc., 1955, No. 1).

The scheme of the statute, as appears from reading sections 204 and 207 together, is as follows: The employee must first attain initial eligibility by working for a covered employer for four consecutive weeks. Thereafter: (1) the employer is liable under section 204 for any disability occurring during the period of active employment; (2) a Special Fund created by assessments pursuant to section 214 is liable under section 207 for any disability occurring during a period of unemployment; (3) a transitional period of four weeks is provided after the termination of employment during which the former employer continues to be liable for any disability. This is to cover the period between the termination of the active employment and the time of re-entry into the active employment of the employer, or the period during which the employee may seek new employment or may seek unemployment insurance benefits. Upon the employee's re-entry into the active employment of the employer within the four-week period, the latter's liability for disability benefits remains unbroken. Upon the employee's entry into the employ of a new covered employer, within the four-week period, the liability of the new employer attaches immediately. If he enters the employ of an employer who is not covered by the Disability Benefits Law, the liability of the former employer ends on the fifth day of the new employment. If the employee does not find new employment, he may apply for unemployment insurance benefits, in which case the liability of the Special Fund will attach after the end of the four-week transitional period. If the employee thereafter becomes ineligible for unemployment insurance benefits because of a disability, the Special Fund is liable for the disability benefits. There is also a provision under which unemployed persons who are ineligible for unemployment insurance benefits because of lack of qualifying wages are covered by the Special Fund.

It is evident from this statutory scheme that the term '' employment '' means actual work for remuneration, or wage-earning employment. That is the meaning which is given to the term in determining eligibility or lack of eligibility for unemployment insurance benefits (*Matter of Emery,* 281 App. Div. 426); the same meaning must be given to the term in determining eligibility or lack of eligibility for disability benefits. The two statutes are parts of a single statutory scheme; the two parts could not be integrated and made to work together if the term '' employment '' were not given the same meaning in both

statutes. An employee who is on leave of absence without pay is unemployed and may obtain unemployment insurance benefits (*Matter of Schultz,* 272 App. Div. 1094; *Matter of Marshall,* 282 App. Div. 531; *Matter of Spinella,* 282 App. Div. 974; *Matter of Dresher,* 286 App. Div. 591). The granting of a leave of absence without pay must be given the same effect under the Disability Benefits Law. It terminates the employment for the purpose of that law as well as for the purpose of the Unemployment Insurance Law. If a disability occurs during the period of a leave without pay, after the first four weeks, the Special Fund covering unemployed persons is liable for the disability benefits.

It is thus apparent that in the case of an ordinary leave of absence without pay, the employee has complete disability benefits coverage but, after the transitional period of four weeks, the coverage is not coverage under section 204 at the expense of the employer or insurance carrier; it is coverage under section 207 out of the Special Fund covering unemployed persons. There is no need to strain the construction of the term " employment " in the Disability Benefits Law in order to bring the employee, who is out of work under a leave of absence without pay, within disability benefits coverage. Such coverage is explicitly provided for him under the statue.

In the case of a maternity leave of absence, the disability resulting from maternity itself is excluded from disability benefits coverage by subdivision 3 of section 205, which provides that no benefit shall be payable " for any period of disability caused by or arising in connection with a pregnancy ". A maternity leave without pay nevertheless constitutes a termination of employment like any other leave without pay. Therefore, a disability unrelated to the pregnancy, which occurs more than four weeks after the commencement of the leave of absence, is not covered by the employer's liability under section 204. Neither is it ordinarily covered by the Special Fund's liability under section 207 because the employee is usually not available for employment during the period of the maternity leave and hence is not eligible for unemployment insurance benefits. If, however, the employee is actually able to work during some part of the maternity leave, either before or after the birth of the child, she may re-enter employment with a covered employer and thereafter obtain coverage under section 204 or she may apply for unemployment insurance benefits at which time coverage under section 207 will attach. (Cf. *Matter of Aufieri,* 278 App. Div. 733.)

In the present case, it is conceded by the claimant that she had not fully recovered from the birth of her child and was not able

to go back to work at the time when she contracted the illness for which an award is sought. This illness occurred more than four weeks after the commencement of her leave of absence so she was not covered by section 204 and, since she was not eligible for unemployment insurance benefits, she was not covered by section 207.

The exclusion of the claimant from disability benefits coverage, under the circumstances, is a necessary consequence of the statutory provisions (1) excluding pregnancy as a covered disability and (2) excluding from unemployment insurance benefits and the incidental disability benefits coverage, persons who are not available for work. That this result was contemplated by the Legislature appears from the report of the Joint Committee which the Legislature had before it at the time it enacted the statute. The question of covering disability due to maternity had been fully considered by the committee and it had been decided that that would be too costly and, therefore, such disability was excluded from the statutory coverage (1949 Report of N. Y. Joint Legis. Comm. on Industrial and Labor Conditions, Legis. Doc. No. 67, p. 44).

The Attorney-General draws our attention to the last sentence of section 203 of the statute as supporting the award of benefits in this case, but that sentence, when analyzed, supports the appellants' position rather than the claimant's. It reads: " An employee who becomes disabled while eligible for benefits in the employment of a covered employer shall not be deemed, for the purposes of this article, to have such employment terminated during any period he is eligible to receive benefits under section two hundred four with respect to such employment ". Under this provision, if an employee suffers a covered disability while employed and leaves his work because of the disability, his employment is not deemed terminated and he is still protected in the event he contracts another disability during the period of the first disability. But this provision is not applicable to pregnancy in view of subdivision 3 of section 205, quoted above. The claimant was not " eligible to receive benefits " on account of her pregnancy and hence her employment was not deemed continued during the period of her maternity leave under the quoted sentence of section 203.

The fact that it was thought to be necessary to provide that, when one leaves work because of an illness covered by the Disability Benefits Law, the employment should not be deemed terminated, indicates that it was understood that, in the absence of such a provision, leaving work, even because of a covered illness, would result in a termination of employment. If employ-

ment would have been terminated by the taking of sick leave because of a covered illness, in the absence of a special provision to cover the case, a fortiori, employment is terminated when leave is taken because of pregnancy which is expressly excluded from coverage. Underlying the quoted sentence of section 203, is the understanding that leaving work for any reason terminates employment for the purpose of the Disability Benefits Law in the absence of an express provision to the contrary.

The language of subdivision 3 of section 205 also makes it clear that the draftsmen regarded the taking of a leave of absence on account of pregnancy as a termination of the employment. The subdivision provides, that despite the general exclusion of pregnancy disability from coverage, there may be coverage for a disability connected with pregnancy, if the disability occurs after the termination of the pregnancy and " *after return to employment* with a covered employer for a period of two consecutive weeks following termination of such pregnancy " (italics added). This language plainly assumes that the maternity leave, in the first instance, constitutes a termination of employment. It is only after a " return to employment " that coverage may attach if the employee is otherwise eligible for coverage and even then the coverage does not embrace any disability connected with the pregnancy until two consecutive weeks of work have been performed.

We thus reach the conclusion that, upon the basis of the plain language of the Disability Benefits Law, the leave of absence taken by the claimant terminated her employment. This conclusion is fortified by the administrative construction of the statute. Rule 3 of the Regulations under the Disability Benefits Law adopted by the board provides that " Service for wages * * * performed in any trade, business or occupation * * * constitutes employment " (N. Y. Off. Comp. of Codes, Rules & Regulations [5th Supp.], p. 627).

The administrative approval of the plan adopted by the appellant employer is also entitled to consideration. Under section 211, an employer may adopt a plan or agreement in lieu of making provision for the benefit payments specified in the statute, provided that it is accepted by the chairman of the board as satisfying the statutory obligations of the employer. The plan adopted by the appellant was approved by the chairman and was in effect at the time of the claimant's illness. The plan spells out explicitly what is implicit in the scheme of the statute. " Termination of employment " is defined as " cessation of active work ". Section 5 of the plan reads in part:

" *Termination of employment,* for the purpose of Accident and Health Insurance hereunder, means *cessation of active work* as an Employee as defined in section 1 hereof, except that in case of the absence of an Employee from active work because of temporary lay-off or leave of absence for reasons other than Military duty, his employment may, for the purposes of his Accident and Health Insurance hereunder, be deemed to continue until terminated by the Employer but in no case beyond the expiration of thirty-one days following the date such lay-off or leave of absence commenced." (Italics added.)

The claimant was, of course, entitled to the benefits under the plan insofar as they were more favorable than those provided in the statute. Therefore she was covered for 31 days after the termination of her employment by the granting of the leave of absence, rather than for four weeks as provided in the statute, but her disability occurred more than 31 days after the commencement of her leave of absence. The plan also provided for specific maternity benefits in a lump sum, which are not provided for in the statute. These maternity benefits have been paid to the claimant.

The approval of the plan by the chairman of the board with its explicit definition of the meaning of termination of employment, as satisfying the requirements of the statute, is entitled to weight as an administrative construction of the statute. It may also be noted that in the latest case arising under the Disability Benefits Law, with respect to maternity leaves, the board has held that the maternity leave constitutes the termination of employment, a holding which is in conflict with the decision in the present case (DBL Case No. 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, May, 1955, 10 Workmen's Comp. Bd. Dec. 57).

The respondent stresses the fact that the maternity leave was compulsory under the rules of the company and that, if the claimant had had free choice in the matter, she might have elected to work beyond the seventh month of her pregnancy to a date closer to the date of the birth of the child. Whether the leave of absence was compulsory or whether it was taken at the option of the employee seems to us to be wholly immaterial in determining whether the employment had terminated. Layoffs for lack of work are always involuntary from the standpoint of the employee but they nevertheless constitute terminations of employment; a leave of absence without pay under company rules cannot be given any different legal significance. In any event, the fact that the claimant was compelled to leave somewhat earlier than she might have chosen to leave voluntarily is of no materiality in this case. The disability for which the

present claim is made occurred after the birth of the child during a period of convalescence from the childbirth and at a time when the claimant was concededly unable physically to return to work. The periods of time specified in the company rules therefore had nothing to do with the case. Without regard to any company rule on the subject, the claimant was physically unable to engage in active employment at the time when the disability occurred.

The respondent places great reliance upon certain statements in the opinion of this court in *Matter of Kriete* v. *Todd Shipyards* (285 App. Div. 36, affd. without opinion 308 N. Y. 1027). The *Kriete* case dealt with the initial acquisition of eligibility for disability benefits by employment by a covered employer for four or more consecutive weeks. There are statements in the opinion which assume that the period of a leave of absence may be considered a part of the essential four-week period but those statements were not essential to the decision. Kriete was a longshoreman who had worked for the same employer for almost 11 years, under the " shape-up " system. He " shaped-up " several days each week for more than four consecutive weeks, although work was not available for him every week. This was said to be the " broad basis " of the claimant's eligibility. This theory of eligibility was expressly incorporated into the statute by an amendment to section 203 enacted by chapter 362 of the Laws of 1955. By that amendment, it was provided that " employees in employment during the work period usual to and available during such four or more consecutive weeks in any trade or business in which they are regularly employed and in which hiring from day to day of such employees is the usual employment practice shall be eligible for disability benefits ". While this statute was not in force during the period of Kriete's employment, the rules of the Workmen's Compensation Board, which were in force at that time, contained a similar provision (Regulations under the Disability Benefits Law, rule 52, subd. a, par. b).

The special rule of the *Kriete* case has no application to the present case. It rests upon a rule applicable only to special industries in which hiring from day to day is the usual employment practice and in which employees " shape-up " or apply for work each day. The title of the session law incorporating this rule into the statute states that the amendment is designed to cover " intermittent workers in certain trades ". Since the Court of Appeals affirmed the decision in the *Kriete* case without opinion and did not retract the general rule which

it had laid down in the *Russomanno* case (306 N. Y. 521, *supra*) that the term " employment " in the Disability Benefits Law means actual work, it must be assumed that the court based its decision in the. *Kriete* case upon the special rule applicable only to industries in which daily hiring is the customary practice.

The award should be reversed and the claim dismissed, with costs to the appellants against the Workmen's Compensation -Board.

BERGAN, J. (dissenting). The statute setting up disability benefits is laid on a very broad base. (Disability Benefits Law, § 203.) It does not provide merely that benefits are payable if the disability occurs at precisely the time a claimant is doing work for wages; rather the right flows from the relationship.

Benefits, so the statute runs, shall be payable to " employees " of a covered employer. It is not required they be drawing pay for hire when disability occurs; but rather that they be " in employment ", which is a more inclusive term and which could reasonably contemplate temporary leaves of absence where it was understood the employment continues; or during unpaid vacations or other suspensions of the work and pay, but not the relationship.

A common example of continuance of the relationship would be at weekends in an hourly wage job. If a man became ill on Sunday night it would not be held that he was out of employment because the last work he did for which he was paid was, for example, the Thursday before.

And this is not because of the provision of section 203 requiring that he continue to be eligible for benefits during a period of four weeks " after such employment terminates ". No one would think that employment had terminated; coverage would exist, rather, because the statute provides he would " continue to be eligible " during the employment. How long the employment relationship may continue while an employee is not receiving pay is a matter of degree and intention between employer and employee; and it would be expected to differ.

To say that there are other provisions for disability during periods of unemployment concomitant with the right to unemployment insurance benefits is to add nothing to this problem. The question here is whether it could be found as a fact on this record that the claimant's employment continued through her pregnancy leave.

The statute does not forbid its continuance; no statutory definition interdicts an intention by the parties to effect such continuance; and the parties themselves certainly could be found on a proper record to have intended a continuance.

Decisions of the court in *Matter of Russomanno* v. *Leon Decorating Co.* (306 N. Y. 521) and *Matter of Kriete* v. *Todd Shipyards* (285 App. Div. 36, affd. 308 N. Y. 1027), both dealt with the problem of acquiring the qualifying number of weeks of employment to achieve eligibility and hence are not directly controlling here; but it is interesting to note that in *Kriete* the question whether the employment relationship continued so as to fill out the qualifying period in the absence of an actual day by day work for day by day pay was held to be a question of fact. To the extent that it is also reasonable to think after an employee has qualified for benefits the continuance of qualifying employment is a question of fact, the *Kriete* case is of some aid in determining the case before us.

The provisions of subdivision 3 of section 205 exclude from benefits a period of disability connected with pregnancy. It is not contended here that the disability claimed had any connection with pregnancy; it had no such connection. But even a disability caused by pregnancy is covered if it arises " after return to employment " for two consecutive weeks beyond the termination of pregnancy (§ 205, subd. 3).

The words " after return to employment " are italicized in appellant's brief and it may be that where a claim for benefits is based on the effects of pregnancy, a woman must actually be physically working for two consecutive weeks after the end of her pregnancy before she establishes that special kind of eligibility. It is not necessary to reach that question because that is not this case.

The question here is whether for a disability not connected with pregnancy the employment relationship may be found as a question of fact to have continued notwithstanding no work was done during a limited period and no wages were paid.

The record sufficiently supports the finding that the employment relationship continued during the pregnancy leave. At the very outset of the proceeding the referee asked appellant's counsel whether the pregnancy leave constituted " a severance of employment ". It was not stated by appellant that it did; rather that it " constitutes cessation of active work ", which is quite a different thing and which in this context necessarily implies a continuance of the relationship.

During the pregnancy period certain benefits arising from the employment relationship were due claimant and were paid by the appellant carrier. An " active " and " inactive " file, and a " dead " file for employees who " leave for good " were maintained by employer, and claimant's records while on her pregnancy leave were in the " inactive " file. Some of claim-

ant's benefits arising from the employment relationship, including her " package insurance coverage " were continued many months beyond the period of disability here in issue.

She had, by agreement between the employer and her union, certain " rights " of " continuity of service " which the employer recognized and acted upon. Upon this record which has some substantial evidence of continuity of the employment relationship, it ought not be held that the relationship could not, as a matter of law, continue. It seems to be argued that because claimant was not making contributions based on payroll payments at the very moment of disability she finds herself shut out for nonparticipation in a statutory scheme requiring mutuality of contributions. She had made her statutory contributions regularly as far as this record shows from the time employment began until her leave of absence started. No default is established which would take away her right to benefits.

If, as it has been argued, the case of the shape-up of longshoremen considered in *Kriete* is a special one requiring special treatment, the case of the woman in industry, disabled for a cause not related to pregnancy, is no less a special case.

The award should be affirmed.

FOSTER, P. J., COON and GIBSON, JJ., concur with HALPERN, J.; BERGAN, J., dissents, in a memorandum.

Award reversed and the claim dismissed, with costs to the appellants against the Workmen's Compensation Board.