Dye, J.
The dispositive question on this appeal is whether or not a female employee who is on maternity leave is ‘ ‘ in employment ” within the meaning of the term “in employment ”, as set forth in section 203 of the New York State Disability Benefits Law (Workmen’s Compensation Law, art. 9).
It is undisputed that the claimant, a married woman, had been in the employ of the General Electric Company for more than six years prior to July 3, 1953; that on that day she went on compulsory maternity leave of absence without pay pursuant to company rules requiring pregnant employees to stop work in the seventh month of pregnancy. By the same rule, a pregnant employee was required to remain away from work for at least eight weeks following birth of the child; the child was born September 29, 1953, the claimant being confined until October 4, 1953. Thereafter, on October 31, 1953, which was within the eight weeks’ waiting period prescribed by the rule, the claimant was readmitted to the hospital for surgery unrelated to the pregnancy, causing her to be disabled from October 31,1953 to February 6,1954, for which period (less the statutory period of waiting) the Workmen’s Compensation Board made her an award of disability benefits (Disability Benefits Law [Workmen’s Compensation Law, art, 9], § 204). This was on the basis that the employee’s compulsory maternity leave of absence did not constitute a termination of employment.
*99 Upon an appeal to the Appellate Division, that court reversed the award and dismissed the complaint because a majority took the view that the employer’s liability to pay disability benefits was not dependent on the existence of the employer-employee relationship but, rather, upon whether the claimant was “ in active wage-earning employment at that time ”. We believe this was erroneous as matter of law.
On the date the claimant’s compulsory leave began, she was ‘ ‘ in employment ’ ’ and had been for more than the required time to qualify for eligibility under the Disability Benefits Law; that her employment continued during the period of pregnancy leave was recognized by the employer by payment of pregnancy benefits according to the prescribed schedule, continuance of her insurance and maintenance of her employment status pending return to active work pursuant to the collective bargaining agreement then in force. True, during the period of leave, she was not actually performing services for her employer, but this does not mean that the involuntary taking of such leave amounted to a severance of employment so as to defeat her eligibility for disability benefits for a nonpregnant disability occurring before the termination of the maternity leave. Such a result would be contrary to the legislative objective. The Disability Benefits statute is broad in concept and general in terms. It was designed to assist the employee of the State who suffered disability by bridging the gap between the Workmen’s Compensation Law and the Unemployment Insurance Law. Unlike the Workmen’s Compensation Law, the Disability Benefits Law contains no requirement that the cause of a disability arise out of and in the course of employment. It contemplates a broad social coverage to protect the employee against the hazard of sickness and disability which interfere with and prevent his continuance in active employment and which can occur and do occur both within and outside of working hours. To be effective, it depends on the concept that employment continues until terminated.
Section 203, insofar as pertinent, specifically provides that “ Employees in employment of a covered employer for four or more consecutive weeks * * * shall be eligible for disability benefits * * * Every such employee shall continue to be eligible during such employment ” (emphasis supplied).
*100 By legislative definition (see § 201) “ ‘ Employment ’ means employment in any trade, business or occupation carried on by an employer,” with certain exceptions not here involved. 1 ‘ ‘ Disability ’ during employment means the inability of an employee, as a result of injury or sickness not arising out of and in the course of an employment to perform the regular duties of his employment ” (§ 201). When read in context and in light of the whole statutory scheme, it seems clear beyond any doubt that, when the Legislature employed the term ‘ ‘ in employment ”, they meant the relationship commonly understood as existing between the employer and employee and intended that it should continue unless and until severed. Here, as we have said, there was no severance of that relationship. The parties . having recognized continuance of the employment relationship for all other purposes, it seems patently unreal and contrary to the spirit and obvious intent of the statute to say that, for purposes of disability, the performance of actual work must be continuous. In fact, when the Legislature used the term “ every such employee shall continue to be eligible during such employment ”, they negated any such result (§ 203). Nowhere does the statute use words or language limiting disability benefits to disabilities occurring within the time limitations calculated from the last day the claimant actually performed work; nor may such limitation reasonably be read into the term “in employment ”. If there be any doubt — and we have none — as to the ordinary and usual meaning of that phrase, it should be construed liberally and in harmony with the purpose to be accomplished (Matter of New York Post Corp. v. Leibowitz, 2 N Y 2d 677; Matter of Schmidt v. Wolf Contr. Co., 269 App. Div. 201, affd. 295 N. Y. 748). In fact, our recent decisions, as well as the view of the text writers, approve the concept of employment status as directly related to the legislative objective (1 Larson, Workmen’s Compensation Law, § 43.41, pp. 628-629). For instance, in Matter of Kriete v. Todd Shipyards (285 App. Div. 36, affd. 308 N. Y. 1027), an employee’s eligibility for disability benefits was questioned because the disability complained of occurred within two weeks following his return to work after a medical leave of absence, the contention being that he did not satisfy the statutory provision ‘1 in employment of a covered *101 employer for four or more consecutive weeks It appeared, however, that the claimant had worked for the same employer for upwards of 11 years under the “ shape up ” system in use on the waterfront and that during that time he had worked for several periods “of four or more consecutive weeks”. In affirming the award we necessarily held that the employment relationship had existed for the required statutory time. In Matter of Decker v. Dunkler (8 A D 2d 891) we denied a motion for leave to appeal (7 N Y 2d 705 [Oct. 8, 1959]). In that case the disability occurred during the period the employee was disabled by reason of an accident covered by the Workmen’s Compensation Law. There the board made a specific finding that the claimant’s employment was not terminated during the period of his “on the job” disability, thus employing the principle that the statute should be applied in light of the existing employer-employee relationship. However, when the employer-employee relationship has not existed long enough to satisfy eligibility requirements, then a claim for benefits will be denied (Matter of Russomanno v. Leon Decorating Co., 306 N. Y. 521), as is also the situation where the employer is not covered (Matter of Knapp v. Syracuse Univ., 308 N. Y. 274).
Nothing in subdivision 3 of section 205 has any possible bearing on this problem, since the period of disability neither resulted from nor arose in connection with pregnancy. Bather, the causes were wholly disconnected. The question of employment is one of fact and lies within the province of the fact-finding powers of the Workmen’s Compensation Board.
The remaining question as to whether the claimant is entitled to disability benefits under the General Electric insurance plan need not detain us, for it necessarily follows that, if the claimant’s employment relationship qualifies her for eligibility for disability benefits under the act, she was entitled to disability benefits under the insurance plan “ at least as favorable as the [statutory] benefits ” (Disability Benefits Law, § 211, subd. 4). Anything contained in such plan contrary or inconsistent with the statute must yield thereto.
The order should be reversed and the award of the Workmen’s Compensation Board reinstated, with costs in this court and in the Appellate Division to the Workmen’s Compensation Board.
*102 Chief Judge Conway and Judges Desmond, Fuld, Froessel and Burke concur with Judge Dye ; Judge Van Voorhis dissents and votes to affirm.
Order reversed, etc.