Chief Judge Conway.
The Workmen’s Compensation Board (hereinafter referred to as the Board) has made an award to the claimant widow of one Anthony Palermo. Mr. Palermo suffered a fatal coronary attack on July 31, 1954 which the Board found was causally related to injuries he sustained in an auto collision on July 1, 1954 during the course of his employment. The question presented for our decision is whether there is substantial evidence to support that finding.
On July 1, 1954 Mr. Palermo was operating his employer’s truck when it was struck by a United States mail truck. The impact caused him to be thrown to the pavement and he was unconscious for several minutes. He was taken to a hospital where his injuries were diagnosed as contusion of the right elbow and abrasion of the scalp in the frontal and occipital region. X-ray of the skull failed to disclose any evidence of fracture of the cranial vault, and there was no sign of intracranial pathology. Mr. Palermo was referred to his own physician. On the next day he consulted Dr. Arnold Nathan who made a diagnosis of contusion and abrasion of the right forehead, swelling and abrasion of the right posterior vertex, abrasion of the right hypochondrium (described by Dr. Nathan as the right lower chest), and tenderness and stiffness of the *531 right shoulder. Iu a report of July 6, 1954 Dr. Nathan noted: “ Cerebral concussion ”. Mr. Palermo made no complaints of a cardiac nature, and Dr. Nathan found no evidence of any cardiac ailment. Mr. Palermo returned to work on July 12th and continued to do his regular work until his death on July 31st. It was at 3:10 a.m. of that day when Dr. Polikronas Kusa was called to the Palermo home. Mr. Palermo was acutely ill and was suffering from severe chest pains which Dr. Kusa characterized as precordial pain. After the doctor administered morphine Mr. Palermo was rushed to the hospital where he died at 4:10 a.m. The death certificate shows the cause of death to be coronary occlusion and coronary thrombosis.
An autopsy was performed at the hospital by a Dr. Frederick Weinberg’, a pathologist, at the direction of the Coroner, Dr. P. Jerome Laviano. The autopsy report contained, among other things, a description of the heart, arteries, and the thrombus. In addition, Dr. Laviano requested Dr. Weinberg to perform a microscopic examination, the report of which also contains certain information about the condition of the heart and arteries. Dr. Laviano did not participate in these procedures, but he examined the reports and discussed them with Dr. Weinberg.
At the hearing, Dr. Laviano testified for the employer and Dr. Nathan testified in behalf of the widow. Their opinions were conflicting. Dr. Laviano testified there was no doubt that the heart and other contents of the chest cavity were shaken up by the accident on July 1st. However, he was of the opinion that the condition of the heart, arteries and thrombus as disclosed upon the autopsy and microscopic examination was such that the thrombus could not have been formed more than two weeks before the fatal attack. He said: “ * * * I feel then
that this thrombus was not due to the accident but was something that developed later.” Dr. Nathan, on the other hand, testified that the force of the blow sustained by Mr. Palermo when he was thrown from his truck may well have produced heart injury. He explained: “ This then results in a reaction where we have the production of or clotting of blood within the vessel wall at the site of the injury. And we have the resultant coronary occlusion.” We agree with the majority of the Appellate Division that Dr. Nathan’s testimony, together with the other evidence in the case, satisfies the requirement that there *532 be substantial evidence underlying the determination of the Board.
It is impossible to reject as insufficient in law the testimony of Dr. Nathan. There can be no doubt of the fact that his opinion was in favor of causal relation whether or not one agrees with it. It was not empty speculation, nor was it a mere general medical lecture. The hypothetical question posed to him contained all of the salient facts of the case, and his opinion was directed to those facts. The record emphatically establishes that in forming his opinion Dr. Nathan considered both the autopsy and microscopic findings. This is not a case where a doctor gives an opinion upon a state of facts not established in the record, and against which there is contrary and overwhelming evidence and opinion. (See Matter of McCormack v. National City Bank, 303 N. Y. 5.) Here there is uncontroverted proof that Mr. Palermo suffered injuries as a result of being thrown from his truck.
Dr. Laviano testified that the autopsy and microscopic findings were in no event susceptible of the conclusion that the accident could have precipitated the fatal coronary. That, of course, was only his opinion—his interpretation of the findings. It would be a gross inaccuracy to attribute to Dr. Laviano’s opinion the character of incontrovertibility. True, the facts upon which his opinion was based, viz., the autopsy report and microscopic findings, were undisputed, but that is all. There is nothing uncontrovertible about Dr. Laviano’s conclusion from those facts. It was both controvertible, and controverted. It may not be said that there was no issue of fact, or no evidence to support the conclusion of causal relation. Dr. Nathan’s opinion was directly contrary to Dr. Laviano’s, and it was based also upon the autopsy report and microscopic findings. Moreover, Dr. Nathan had personally examined Mr. Palermo after the accident. Dr. Laviano had not. It may also be observed that Dr. Nathan was a specialist in cardiology whereas Dr. Laviano" was not.
In sum, therefore, there are in this case two conflicting expert opinions each one based upon the same facts. The selection of either is an exercise of fact-finding power which is entirely within the province of the Board and outside the limited jurisdiction of this CQprt, It is not our function to render a decision *533 upon the basis of which expert opinion we deem is more weighty or persuasive. The testimony of each expert was sufficiently direct and specific to create an issue of fact and to warrant a finding either for or against causal relation. That issue has been resolved by the appropriate body—the Board—in favor of the claimant widow, and the record leaves us no course but to affirm.
The order of the Appellate Division should be affirmed, with costs.