■ In the Matter of MURRAY M. ROSSMAN, Respondent, v. IMPERIAL FASHIONS, INC., et al., Appellants, and BRETTLER INTERNATIONAL CORP., et al., Respondents. WORKMEN'S COMPENSATION BOARD, Respondent.— COOKE, J. Appeal from a decision of the Workmen's Compensation Board, filed December 27, 1967, finding that an employer-employee relationship existed between claimant and Brettler International Corp., Madras Cloth Specialties Company, Inc., and Imperial Fashions, Inc. (hereinafter referred to as Brettler Corp., Madras and Imperial, respectively). The issue on this appeal is whether said relationship existed between claimant and the last two mentioned concerns. Having answered an advertisement in a daily paper announcing an opening for a salesman, claimant was employed by Brettler Corp. solely as a commission salesman, starting in March, 1964. Brettler Corp. was engaged as a commission selling agent, selling fabrics purchased abroad by other companies or those manufactured domestically by other companies to clothing manufacturers and the "trade", at times designing such merchandise. It maintained a business office at 135 West 50th Street in New York City, had different salesmen and at the time of the accident, was the commission selling agent for various companies including Madras and Imperial. White, Lamb, Findlay, Inc., had four subsidiaries, two of which were Madras and Imperial. Madras had its office at Montclair, New Jersey, imported cotton piece goods from India and, according

to its secretary, had only office employees and no salesmen, the exclusive sales agent for Madras being the Brettler Corp. Except for brief travel periods, claimant went to the Brettler Corp. office in New York City every day operating exclusively out of same and using said corporation's facilities such as office furniture and secretarial help, never going to Madras' office in Montclair. He sold Madras cloth and woolens, his commissions on the sales of woolens being paid by Brettler Corp. and those on the sales of Madras being paid by Madras, with Brettler Corp. receiving a commission on all sales of the various fabrics accomplished by claimant. Claimant testified that travel and entertainment expenses were paid both by Brettler Corp. and by Madras. The president and sole stockholder of Brettler Corp. testified that, at his request and solely to oblige Brettler Corp., Madras paid claimant directly, instead of paying Brettler Corp. which in turn would pay claimant, this being confirmed by the secretary of Madras and also, in effect, by claimant who explained the practice: " I will tell Mr. Brettler I would like to get some money and he will call up Madras Cloth & Specialties Company, and a few days later or a week I will receive a check." In its decision the board stated that Monroe Brettler, president of Brettler Corp., testified " that the claimant performed sales functions for Madras Cloth Specialties Company, Inc. and Imperial Fashions, Inc., as well as for the Brettler International Sales Corporation." This was taken out of context since, among other things, Mr. Brettler testified that any work claimant performed was done through the Brettler Corp. In fact, claimant himself stated that he " did not have any line except Brettler's " and, when asked if he sold goods for any other person during the year that he worked for Brettler, responded, " I don't remember. I don't think I did ". Claimant was injured in the Brettler Corp. office on February 26, 1965 when he struck his knee on a desk drawer — at a time when he was checking invoices from India for Brettler Corp. Concededly, claimant was in the employ of Brettler Corp. In determining whether such a relationship existed also between Madras and claimant and in applying the " relative nature of the work " test, investigation is directed to the following ingredients: the character of claimant's work, how much of a separate calling it is, whether it is continuous or intermittent, whether it is expected to be permanent, its importance in relation to the employer's business and its character in relation to whether or not it should be expected to carry its own accident burden (Matter of Paly v. Lane Brush Co., 6 A D 2d 50, 54; 1A Larson, Workmen's Compensation Law, § 43.52). Claimant was not a salesman without business attachments exclusively selling the products of Madras but, rather, a bona fide employee of a business which, although concentrating heavily on the sale of Madras' fabrics, sold for other companies as well. Brettler Corp. provided coverage for claimant and, thus, a scheme to avoid workmen's compensation insurance responsibility is not involved. In adverting to the traditional " right to control " test (Matter of Grant v. Frontier Oil Refining Co., 20 A D 2d 493; 1A Larson, Workmen's Compensation Law, § 44), we find no direct evidence of any right or of any exercise of control of claimant by Madras, there being no proof such as an employment contract with Madras, or even an oral arrangement, with provisions for control, leads or directions as to selling or reports to make, all of the testimony indicating that any control exercised was solely that of the Brettler Corp. The method of payment, commissions by Madras directly to claimant, in and of itself, is a neutral element (1A Larson, Workmen's Compensation Law, § 44.33[b]). As to the furnishing of equipment, none was supplied by Madras. Brettler Corp., having hired claimant, could fire him and there is no evidence of any right to fire by Madras, nor can such right be inferred. When claimant wanted money for his sales of Madras

cloth, it was the president of Brettler Corp. who contacted Madras. Had claimant been an employee of Madras, claimant would have communicated directly with Madras and there would have been no need for claimant to first contact Mr. Brettler. As a matter of fact, there was no contact between claimant and Madras other than the payment of the commissions — done at the request of Brettler Corp. so they would not have to go through its books, due to a proposed corporate realignment. Although payment on a commission basis does not preclude a finding of employer-employee relationship, such payment alone does not establish the relationship. Insofar as Brettler Corp. was a selling agent, the fact that bills were made by Madras to customers adds nothing to the solution. Madras' name was not on the Brettler Corp. door and, not knowing the wording employed or the manner in which Madras' name was used on claimant's cards, a conclusion cannot be drawn therefrom. Although there is a mutual business interest between two employers, and perhaps even some element of control, joint employment as to one employer cannot be found in the absence of a contract, express or implied, with that employer (*Matter of North* v. *Richards,* 283 App. Div. 21; 1A Larson, Workmen's Compensation Law, § 48.40, pp. 843–844), there being no proof of such a contract here between claimant and Madras. The situation here, between claimant and Madras, is different from that in cases such as *Matter of Gordon* v. *New York Life Ins. Co.* (300 N. Y. 652), where there were elements of control, even though slight, and where claimant was trained by the insurance company, attended weekly meetings at its office, could be fired without cause and sold insurance exclusively for the alleged employer, thus having no one else to turn to for coverage. Likewise, *Matter of Janikowski* v. *Yardleys of London* (11 A D 2d 577) is distinguishable. There, claimant was hired by a department store to sell only Yardleys' products at a counter in the store, claimant being subject to all rules of the store and subject to discharge by it. However, the store was reimbursed by Yardleys for claimant's salary and Yardleys instructed her as to the nature and price of its various products. The store and Yardleys were both held to be employers but, unlike Madras, Yardleys authorized the selection of an employee to handle nothing but its merchandise, instructed her and paid her on a time basis, surely indicative of control. As to Madras, this case resembles *Matter of Grant* v. *Frontier Oil Refining Co.* (20 A D 2d 493, *supra*) where Frontier, engaged in the gas and oil business and owning several service stations, entered into a lease and retail dealer's agreement regarding one of its stations with Heinz, provisions being made for the price and amount of gas to be purchased, as well as the exclusive sale of Frontier's products. It was understood, during negotiations, that the station operator could not repair automobiles. There, the board found that Frontier exerted sufficient control over the station and Heinz, as an agent in the employment of Frontier, and that as such agent Heinz engaged claimants as employees and, therefore, as employees of Frontier. In reversing, this court held the record devoid of evidence to sustain the finding that Heinz, a retail entrepreneur, was the agent of Frontier and that his employees, the claimants, were employees of Frontier. Imperial maintained its own sales office at 500 Seventh Avenue, New York City and claimant's sole contact with it was on one occasion in 1964 when Imperial offered to anyone a flat fee of 10 cents per pair to sell a quantity of stretch pants which were carried over for at least one season and were losing their value. The president of Brettler Corp. recommended claimant, who sold the lot of 5,149 pants and received $514.90 from Imperial, this single deal being the only transaction between claimant and

Imperial. Whatever relationship existed between Imperial and claimant terminated considerably prior to the date of claimant's injuries. Decision reversed and matter remitted for further proceedings not inconsistent herewith, with one bill of costs to appellants. Gibson, P. J., Herlihy, Reynolds, Staley, Jr., and Cooke, JJ., concur in memorandum by Cooke, J.