Felice K. Shea, J.
In this action brought by the Commissioners of the State Insurance Fund (Fund) for premiums under a policy of workmen’s compensation insurance, the legal issue presented is what standard the court should apply in determining whether defendant "employed” maintenance men in the conduct of his cleaning business or whether defendant "sold” maintenance work to "buyers” who operated independently. Since premiums under the policy were based on earnings of the insured’s employees during the policy period, premiums are owed by defendant only if his so-called buyers are found by the court to have been employees.
The Fund contends that this court may not weigh the evidence to decide whether defendant’s maintenance men were employees. According to plaintiffs, an employment relationship must be found unless, upon the record at trial, it can be said as a matter of law that the maintenance men were not employees. The authorities cited in support of this novel theory, which would wrest the fact-finding function from this court, are all cases of appellate review of decisions of the Workmen’s Compensation Board. It is well established that *612 determinations of fact by administrative bodies will not be disturbed by the courts, even when the evidence is conflicting, so long as the findings are supported by substantial evidence. (1 NY Jur, Administrative Law, § 185; 66 NY Jur, Workmen’s Compensation, § 695; Matter of Palermo v Gallucci & Sons, 5 NY2d 529; Matter of Morales v World Mar Corp., 37 AD2d 885; Matter of Abel v McKaig-Hatch, Inc., 36 AD2d 783.) The test for judicial review of decisions by the Workmen’s Compensation Board cannot be applied, however, to this action, tried without a jury, where no administrative body has acted and where the court took extensive testimony, examined documents admitted into evidence, and had a full opportunity to evaluate the credibility of witnesses.
The Fund claims support for its argument, with respect to the circumscribed function of this court, in the case of Commissioners of State Ins. Fund v Rivington Farm Dairy (16 AD2d 58) decided by the First Department in 1962. The Rivington Farm case is one of the few reported compensation cases in which the underlying dispute as to the existence of an employer-employee relationship came to the court via an action for insurance premiums,[1] in contrast to the large number of cases which reach the courts by way of judicial review of action taken by the Workmen’s Compensation Board on claims for insurance benefits. The Rivington Farm court reversed the trial court, found a master-servant relationship on the basis of the record below, and went on to say (p 60): "An additional consideration may be pointed out, though we need not rest our decision on it. We are required to determine the meaning of the terms 'employer’ and 'employee’ as used in a special type of insurance policy. The policy shifts the burden of paying a possible compensation award from the insured to the Fund; it is for the assumption of that burden that premiums are asked and paid. Accordingly, if there is a reasonable risk that the Workmen’s Compensation Board would hold persons to be employees rather than independent contractors, it is fair to infer that the parties intended premiums to be paid in respect of such persons.”
A careful reading of the Rivington Farm dictum leads this court to conclude that nothing said therein is inconsistent *613 with the exercise of the trial court’s usual fact-finding function. The test to be applied is similar to that which the administrative agency would apply were a claim to be brought by an alleged employee of defendant. (See Matter of Helfrick v Dahlstrom Metallic Door Co., 256 NY 199, 204, affd 284 US 594.) The Appellate Division, in using the words "reasonable risk” did not mean, as plaintiffs would have us believe, that this court must find premiums owing if any risk exists that the board might hold the insurer liable, or if any substantial evidence adduced at trial would support a finding of employment. It is the court’s duty to weigh the evidence, fully and fairly, to determine the facts upon a preponderance of the credible evidence, and to apply the law.[2]
The facts herein are largely undisputed. Defendant solicited maintenance service accounts from customers which he then "sold” to unskilled "buyers” together with cleaning equipment. Defendant furnished a short training period, after which the "buyers” operated without supervision. The contracts of sale provided for a down payment and periodic payments over six to eight months, during which time defendant guaranteed the "buyer” another account or a pro rata return of his investment if the account was lost for any reason other than unsatisfactory performance. During the period within which the "buyer” was paying defendant in installments, defendant billed the customer for the work done, deducted the installment payment due him, and forwarded the balance to his "buyer”. It is upon these payments, during the period July 1, 1969 to September 29, 1972, that plaintiffs calculate premiums claimed to be owed in the sum of $3,231.85. If the court finds that defendant’s "buyers” were in fact "employees”, then plaintiffs must prevail.
While the Workmen’s Compensation Law defines "employer”,[3] "employee”[4] and "employment”[5] in general terms, more enlightenment is to be found in the case law. The traditional test of "right to control”, which determined the master-servant relationship for vicarious tort liability, has been applied by the courts to define the employment relationship in compensation cases. (65 NY Jur, Workmen’s Compen *614 sation, § 161.) The list of indicia of control is long,[6] and precedents may be found on both sides in a variety of borderline cases where, as here, the relationship has some of the earmarks of employment and some of the earmarks of independence.6 [7]
Upon the traditional control test, the courts have superimposed an awareness that the term "employee”, when used in social and labor legislation, must be interpreted in light of the remedial purposes of the law. (See, e.g., Matter of Flo v General Elec. Co., 7 NY2d 96, 100; Matter of Paly v Lane Brush Co., 6 AD2d 50, 53.) According to the leading treatise in the field, "[T]he overall development of compensation law shows that the [employee] concept has been broadened and altered * * * to fit the peculiar needs and purposes of compensation law * * * [An] appropriate * * * subject for compensation protection * * * is [one who is] taking a regular and continuous part in the * * * [business]; his work is hazardous; his rate of pay is such that he and his family cannot be expected to bear the cost of industrial accident; and his place in the industrial process is not such that he could distribute the risk of injury through channels of his own.” (1A Larson, Workmen’s Compensation, §§ 43.41, 43.42.)
The New York courts have expanded the definition of "employee” by giving varying degrees of weight to the conventional indicia of employment, and by applying, in addition, a newer test based on the nature of the work. (Matter of Biktjorn v Worley Homes, 12 AD2d 540; Matter of Paly v Lane Brush Co., supra; see Matter of Gordon v New York Life Ins. Co., 300 NY 652, revg 275 App Div 135.)
"In compensation cases, the principal factors to be considered in determining relationship are right to control, method of payment, furnishing equipment, right to discharge and the so-called relative nature of the work test.” (Matter of Grigoli v Nito, 11 AD2d 581.) The employment relation may be grounded upon proof of any one factor. (Matter of Worth v Hubbell Lbr. Corp., 29 AD2d 1025; Matter of Grigoli v Nito, supra.) On the other hand, the status of independent contractor is established only by convincing evidence that many indicia exist. (1A Larson, Workmen’s Compensation, § 44.31.)
*615 The fact that defendant and his "buyers” entered into agreements in the form of bills of sale will not preclude the court from looking behind the documents to ascertain the true nature of the relationship. (Matter of Morton, 284 NY 167; Matter of Klein v Sunrise Bldg. Co., 7 AD2d 805.)
On the evidence before it, this court finds that defendant exercised sufficient control over his so-called buyers to make them employees for purposes of workmen’s compensation. Defendant solicited maintenance service accounts, negotiated a price for the work to be done, billed his customers, and serviced them through his regular employees until the accounts were "sold”. After the "sale”, defendant continued to bill in his own name on his billhead, holding himself out to his accounts as an employer. Until all installments of the contract between defendant and his "buyer” were paid, the customer did not pay the "buyer” directly. Further, during the life of the contract, defendant guaranteed work for the "buyer”, thus assuming all capital risk. (See Usery v Pilgrim Equip. Co., 527 F2d 1308, 1313.) The fact that defendant supplied cleaning equipment to his "buyers” is another indication of control. (Matter of Glielmi v Netherland Dairy Co., 254 NY 60; Matter of Klein v Sunrise Bldg. Co., 7 AD2d 805.)
The court’s finding that defendant is liable as an employer need not rest alone on the elements of control in his relationship with his "buyers”. The "relative nature of the work” test mandates the same result. The test, as defined by a Federal court applying New York law, "consists of an analysis of the facts to establish (1) the character of the person’s work; (2) the extent to which the worker is engaged in a separate calling; (3) how continuous or intermittent the work is; (4) whether the work is temporary or permanent; (5) the importance of the work to the employer’s business; and (6) the character of the relation to determine whether or not the particular employment should carry its own accident burden”. (Rayhill v United States, 364 F2d 347, 355, n 5; accord: Matter of Rossman v Imperial Fashions, 32 AD2d 1023, 1024; Matter of Paly v Lane Brush Co., 6 AD2d 50, 54, supra.) Here, defendant and his "buyers” were in the same business, and the "buyers” formed a major and integral part of the operation. The relationship between them lasted for at least six months and cannot be said to be temporary or intermittent. The "buyers” performed unskilled, manual labor. They did not furnish an independent *616 business or professional service, and they could not be expected to carry their own risk of injury.
The Workmen’s Compensation Law is remedial in nature and requires a liberal interpretation. (Matter of Commissioner of Taxation and Finance v Nu-Art Adv. Co., 271 NY 112, 115.) The purpose of the law is the protection of workmen from the hazards of employment through a system of insurance. (Matter of Goldberg v 954 Marcy Corp., 276 NY 313, 317; Matter of State Ind. Comm. v Newman, 222 NY 363, 368.) The burden of compensation insurance is one of the costs of doing business, ultimately borne by the consumer. The court will not permit defendant, under the guise of "selling work”, to insulate himself against the costs and bookkeeping inconvenience of workmen’s compensation and other social benefits designed for the benefit of employees.
Judgment for plaintiffs in the sum of $3,231.85 together with interest, costs and disbursements.

. But see Miller v Talbot, 258 App Div 824 and Commissioners of State Ins. Fund v Cunnings, NYU, Nov. 10, 1976, p 10, col 3; see Aleras Car Serv. v State Ins. Fund, NYLJ, Aug. 1, 1975, p 12, col 4 where the issue arose in an article 78 proceeding challenging a finding by the Fund that premiums were owed.

. To the extent that the Aleras and Cunnings cases cited supra in n 1 reach a different result, this court declines to follow them.

. Workmen’s Compensation Law, § 2, subd 3.

. Workmen’s Compensation Law, § 2, subd 4.

. Workmen’s Compensation Law, § 2, subd 5.

. See, e.g., Restatement, Agency 2d, § 220, Definition of Servant.

. For a collection of compensation cases on both sides of the employee-independent contractor controversy, see 65 NY Jur, Workmen’s Compensation § 161, n 10 and 11.